883 F.2d 68
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Bobby L. BERGEN, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant-Appellee.
 No. 88-1343.
 United States Court of Appeals, Fourth Circuit.
 Argued April 14, 1989.
Decided Aug. 3, 1989.
 
 Benjamin Lipsitz for appellant.
 Jacquelyn Cusumano, Assistant Regional Counsel (Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Chief, Social Security Litigation Division, Office of the General Counsel, Department of Health and Human Services, Breckinridge L. Willcox, United States Attorney, Larry D. Adams, Assistant United States Attorney on brief) for appellee.
 Before MURNAGHAN and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Bobby L. Bergen here appeals the district court's decision upholding the Health and Human Services Secretary's denial of his claim for disability insurance benefits. Because substantial evidence supported the Secretary's finding of no disability, we affirm the judgment of the district court.
 
 I.
 A.
 
 2
 The present case originated in October 1984, when Bergen applied for disability benefits. The Secretary denied the claim and an administrative law judge ("ALJ") and the administrative Appeals Council upheld the denial. Bergen then brought an action against the Secretary in federal district court, which remanded the case because of perceived deficiencies in the administrative proceedings. Most notably, the district court found that the ALJ, in dismissing the claim for benefits, had failed "to particularize" the evidence supporting his finding that Bergen's complaints about pain and side effects of medication were not credible.
 
 
 3
 On remand, the ALJ held supplemental hearings, and once again the ALJ concluded that Bergen was not disabled. The Appeals Council reviewed the evidence and adopted the ALJ's decision, with slight modifications.
 
 
 4
 Bergen petitioned the federal district court to reopen his case. The court, on the basis of a memorandum by Magistrate Clarence E. Goetz, held that the Secretary's finding of no disability was supported by substantial evidence. Accordingly, the court granted summary judgment in the Secretary's favor.
 
 B.
 
 5
 Bergen quit work as a heavy equipment mechanic at Bethlehem Steel Corporation in 1984, claiming that pain and other side effects from a 1983 automobile accident precluded him from performing his job. The accident injured his right shoulder.
 
 
 6
 Following his accident, Bergen was examined by a number of physicians whose medical opinions have relevance to Bergen's claim for benefits. Dr. James Murphy, an orthopedic surgeon who began treating Bergen in October 1983 and who performed several operations on his shoulder, rendered a medical opinion in 1986 highly supportive of Bergen's quest for benefits:
 
 
 7
 The patient is still in moderate distress with his right shoulder, though no longer taking pain medication, has significant limitations physically and because of the chronic pain also impairs his mental functioning [sic].
 
 
 8
 I feel the patient's impairment is severe enough that the patient has intractable, unrelenting pain in the right shoulder that has not changed in several years.... [T]he pain is always present, worse with bad weather and because of the persistence of the pain, it would probably make it impossible for him to perform any job because of inability to concentrate....
 
 
 9
 Other physicians, however, found Bergen's condition less debilitating. Dr. Mohammad Zamani examined Bergen in late 1986 and concluded that he had good muscle strength in the upper extremities and that he could lift 15 to 20 pounds and walk without limitation, but should refrain from overhead work and frequent heavy lifting, pulling and pushing. Dr. George D. Yannakakis, a neurologist, examined Bergen in December 1986 and concluded that he could lift only five pounds with his right hand, but that his ability to stand, walk or sit was unaffected. In early 1987, Bergen sought treatment from Dr. Miriam Cohen, a cardiologist. After a follow-up examination, Dr. Cohen concluded that Bergen suffered from hypoglycemia and advised him to eat six small meals per day.
 
 
 10
 In 1987, Bergen consulted a psychologist and a psychiatrist, who both concluded that Bergen suffered a personality disorder. However, Dr. Mohammad Lotfi, the psychiatrist, also concluded that Bergen had sufficient intelligence and concentration ability to perform skilled or semi-skilled jobs.
 
 
 11
 Bergen himself testified as to numerous ailments. He asserted that he suffered constant pain from his shoulder injury, as well as stomach pain and chronic diarrhea which required 10 to 11 trips to the bathroom each day. He claimed to suffer serious side effects from medication prescribed by Drs. Murphy and Cohen. The medication often caused bouts of drowsiness for 30 to 45 minutes after intake, according to Bergen. However, Allan Krumholtz, a medical adviser who testified on behalf of the Secretary, asserted that adjustments could be made in Bergen's medication to alleviate side effects such as drowsiness.
 
 
 12
 The record also contains evidence that Bergen performed light housekeeping chores, including vacuuming, cooking and grocery shopping. Bergen fished in his spare time.
 
 
 13
 In the supplemental hearings before the ALJ following remand from the district court, a vocational expert testified as to the employment opportunities available to a hypothetical person with many of the same characteristics as Bergen. The expert was instructed by the ALJ to assume that the person had, among others, the following characteristics allegedly shared by Bergen:
 
 
 14
 (1) drowsiness from medication lasting up to one hour after intake;
 
 
 15
 (2) the ability to sit for 30 minutes, stand for one hour and walk two blocks;
 
 
 16
 (3) the ability to lift 10 to 15 pounds with the left hand and less than five with the right;
 
 
 17
 (4) constant dull pain in the right shoulder which prevents him from raising his arm above shoulder level;
 
 
 18
 (5) slight numbness in the right hand;
 
 
 19
 (6) chest pain;(7) the need to use the restroom for bowel movements 10 to 11 times per day.
 
 
 20
 The vocational expert testified that a person with those characteristics could perform the jobs of inspector, machine tender and conveyor operator, and that there were hundreds of such positions in the greater Baltimore area.
 
 
 21
 The vocational expert also testified that a person with "down time" (loss of productivity) of more than 20 percent of the work day probably could do no "substantial gainful activity." He further explained that if one calculates 10 restroom breaks per work day at five minutes each, plus up to 45 minutes per day to account for inactivity due to drowsiness from medication, "then you're pushing that 20% for down time." However, the expert took such calculations into account when concluding that the hypothetical person possessing the same characteristics as Bergen could perform various jobs in the Baltimore area.
 
 II.
 
 22
 Review of the record and especially Magistrate Goetz's detailed and thorough opinion satisfies us that the district court properly granted summary judgment in the Secretary's favor.
 
 
 23
 Bergen's argument that there was a genuine dispute of fact foreclosing the grant of summary judgment would have merit if the district court had been trying the case de novo. However, the district court was bound to uphold the Secretary's determination if it was supported by "substantial evidence." Teague v. Califano, 560 F.2d 615, 618 (4th Cir.1977). Summary judgment was an appropriate method of disposing of the case once the district court concluded that substantial evidence supported the Secretary's determination.
 
 
 24
 The district court properly concluded that substantial evidence supported the conclusion that Bergen could perform numerous jobs in the Baltimore area, despite the side effects of his shoulder injury. We reject Bergen's argument that the ALJ failed to give adequate attention to the vocational expert's testimony about the effect of "down time" on a person's ability to find work. Although the expert opined that a person who suffered more than 45 minutes of drowsiness from medication and who had to make 10 trips to the restroom during the work day would approach a "down time" of 20% (a point beyond which a person would be rendered incapable of "substantial gainful activity"), the expert implicitly concluded that Bergen had not crossed the 20% threshold. The expert asserted that a hypothetical person with Bergen's characteristics could perform various jobs in the economy. In so concluding, the expert took Bergen's alleged drowsiness and frequent restroom breaks into account.
 
 
 25
 Bergen also asserts that the expert did not take other factors into account in rendering his opinion as to "down time", including Bergen's "preoccupation with pain" and his need to eat six meals per day. The ALJ, however, found incredible Bergen's assertions about his level of pain after observing his demeanor at the administrative hearing and after considering the range of daily activities in which he participated. Moreover, as the Secretary pointed out, the need for Bergen to eat six times per day would not necessarily occupy a large portion of his work day, especially when one considers that several of those meals could be consumed before and after work.
 
 
 26
 Although Dr. Murphy concluded that Bergen's pain "would probably make it impossible for him to perform any job because of inability to concentrate," there was substantial evidence supporting the opposite conclusion. For example, Dr. Lotfi concluded that Bergen had sufficient concentration ability to perform a variety of jobs. Moreover, the ALJ found Dr. Murphy's 1986 opinion internally inconsistent in its characterization of Bergen's pain level.
 
 
 27
 Bergen additionally has argued that the ALJ failed to obey the Appeals Council's instructions on remand "to particularize the evidence undercutting the claimant's subjective complaints by obtaining additional evidence from the claimant's attending physicians." Contrary to Bergen's argument, however, the ALJ on remand obtained additional evidence from Dr. Murphy, Bergen's attending physician, and meticulously set forth the evidence casting doubt on the credibility of Bergen's assertions about his pain and medication side effects. The ALJ cited medical evidence supporting his conclusion that Bergen could perform substantial gainful activity. The ALJ also discussed Bergen's daily activities of house cleaning and shopping and his hobby of fishing as evidence that he could perform work. We find the ALJ's decision thorough and well-reasoned.
 
 III.
 
 28
 In conclusion, substantial evidence supported the finding that Bergen was not disabled and thus was not entitled to benefits. The district court properly granted summary judgment in favor of the Secretary. The judgment below is
 
 
 29
 AFFIRMED.